UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CATHERINE MYERS, as Special Administrator of the Estate of JAMES H. CHILDERS, Deceased, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CAUSE NO.: 3:23-cv-184 ) |
| MAJOR HOSPITAL d/b/a APERION CARE ARBORS MICHIGAN CITY, THE ARBORS OPERATOR, LLC d/b/a APERION CARE ARBORS MICHIGAN CITY, and APERION CARE, INC, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, Catherine Myers, as Special Administrator of the Estate of James H. Childers, Deceased, by counsel, files her Complaint and Demand for Jury Trial against Defendants, Major Hospital d/b/a Aperion Care Arbors Michigan City, The Arbors Operator, LLC d/b/a Aperion Care Arbors Michigan City, and Aperion Care, Inc., for depriving and/or conspiring to deprive Plaintiff of rights secured under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396, et seq., the Federal Nursing Home Regulations found in 42 C.F.R. Sec. 483, and the Constitution of the United States of America, under color of state law, pursuant to 42 U.S.C. § 1983.

### I.   PARTIES, JURISDICTION, and VENUE

1. CATHERINE MYERS, as Special Administrator of the Estate of JAMES H. CHILDERS, deceased, is an adult individual residing in Porter County, State of Indiana.

2. At the time of his death, JAMES H. CHILDERS resided in La Porte County, Indiana, within the geographical boundaries of the Northern District. At all times relevant to this action, Mr. Childers resided within the geographic boundaries of the Northern District.

3. The facility commonly known as Aperion Care Arbors Michigan City, is a for-profit, long-term care, skilled nursing facility, located in Michigan City, La Porte County, Indiana, within the geographical boundaries of the Northern District of Indiana.

4. Defendant, Major Hospital ("Major Hospital") is a county hospital corporation headquartered in Shelbyville, Indiana. At all times relevant to this action, Major Hospital was the licensee of Aperion Care Arbors Michigan City.

5. Defendant, The Arbors Operator, LLC ("The Arbors Operator") is a wholly-owned subsidiary of a privately held nursing home management company headquartered in Lincolnwood, Illinois. At all times relevant to this case, The Arbors Operator, LLC has been under contract with Major Hospital to manage and operate Aperion Care Arbors Michigan City.

6. Defendant, Aperion Care, Inc. ("Aperion Care") is a privately held nursing home management company headquartered in Monsey, New York. At all times relevant to this case, Aperion Care, Inc., individually, or by and through one of its wholly-owned subsidiaries, has been under contract with Major Hospital to manage and Aperion Care Arbors Michigan City.

7. This case presents an issue of federal law, and therefore, subject matter jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1331.

## II.   FACTUAL ALLEGATIONS

8. On March 4, 2021, Mr. Childers was admitted to Aperion Care Arbors Michigan City for rehabilitation following a procedure. At the time of Mr. Childers' admission to Aperion

Care Arbors Michigan City, he was alert and oriented to person, place, and time, and conversant with the nursing facility staff.

9. On March 4, 2021, Mr. Childers ate 26-50% of his dinner and consumed 650cc of fluids on the evening shift.

10. On March 5, 2021, lab work revealed Mr. Childers had a BUN of 38, creatinine of 1.42, potassium of 5.0, and his Glomerular filtration rate was 49. The same day, Mr. Childers consumed 76-100% of all three meals and consumed a total of 720 cc of fluids on all three shifts.

11. On March 6, 2021, Mr. Childers, consumed 0% of all three meals and consumed 1250 cc of fluids for all three shifts.

12. On March 7, 2021, Mr. Childers consumed 26-50% of all three meals and 1250cc of fluids and was observed as having a "poor appetite."

13. On March 8, 2021, at 8:30 a.m., Mr. Childers was found to be awake but nonverbal and not following commands. EMS was called and he was transported to Franciscan Health Michigan City

14. Upon arrival to Franciscan Health Michigan City, labs revealed Mr. Childers' potassium was 5.7, BUN was 76, Creatinine was 2.2, and his Glomerular filtration rate was 28. At that time, he had significant metabolic encephalopathy from dehydration and prerenal azotemia due to poor oral intake.

15. Mr. Childers died on March 10, 2021.

### III.    LEGAL ALLEGATIONS

**Count One: Deprivation of Rights Under Color of State Law (42 U.S.C. § 1983)**

16. Plaintiff restates each and every allegation in paragraphs one (1) through fifteen (15) as **though fully** set forth herein.

17. Defendant Major Hospital is a municipal corporation owned by Shelby, Indiana, and is therefore "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana]", as that term is used in 42 U.S.C. § 1983.

18. Aperion Care Arbors Michigan City is wholly-owned by Defendant, Major Hospital, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana," as that term is used in 42 U.S.C. § 1983.

19. Defendant, Aperion Care, Inc., manages Aperion Care Arbors Michigan City as an agent of Major Hospital, and is therefore "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana]", as that term is used in 42 U.S.C. § 1983.

20. Defendant, The Arbors Operator, LLC d/b/a Aperion Care Arbors Michigan City, is a wholly-owned subsidiary of Defendant, Aperion Care, Inc., and is therefore "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana]", as that term is used in 42 U.S.C. § 1983.

21. The 1987 Omnibus Budget Reconciliation Act ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), which was contained within the 1987 OBRA, and the implementing regulations thereof, found at 42 C.F.R. § 483, *et seq.,* clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

22. The Defendants' actions, individually and/or collectively, and in derogation of the above statute and regulations, have deprived Mr. Childers of those rights by:

   a. failing to fully inform Mr. Childers in advance of any changes in care or treatment that may affect his well-being;

   b. failing to provide Mr. Childers with reasonable accommodation of his individual needs and preferences;

   c. failing to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of Mr. Childers;

4

d. failed to operate and provide services in compliance with all applicable Federal, State, and local laws and regulations and with accepted professional standards and principles which apply to professionals providing services in such a facility;

e. failing to treat Mr. Childers with respect and dignity and care in a manner and in an environment that promotes maintenance or enhancement of his quality of life, recognizing his individuality;

f. failing to fully inform Mr. Childers of his total health status, including, but not limited to, his medical condition;

g. failing to inform Mr. Childers and his representative of the right to participate in his treatment and supporting them in this right;

h. failing to immediately inform Mr. Childers, consult with his physician, and notify his representatives when there was a significant change in his physical, mental, and/or psychosocial status in either life-threatening conditions or clinical complications), a need to alter treatment significantly;

i. failing to provide Mr. Childers with a safe, clean, comfortable and homelike environment, including but not limited to providing treatment and supports for daily living safely;

j. by maintaining a policy, practice, or custom, that failed to care for Mr. Childers in such a manner and in such an environment as to promote maintenance or enhancement of the quality of life of each resident;

k. by maintaining a policy, practice, or custom that failed to provide Mr. Childers with nursing and related services and specialized rehabilitative services to attain or maintain his highest practicable physical, mental, and psychosocial well-being; that is, by repeatedly and regularly failing to have sufficient staff to care for Mr. Childers;

l. failing to provide Mr. Childers with services, to attain or maintain his highest practicable physical, mental, and psychosocial well-being;

m. failing to provide Mr. Childers with pharmaceutical services (including procedures that assure the accurate acquiring, receiving, dispensing, and administering of all drugs and biologicals) to meet his needs;

n. failing to provide Mr. Childers with an on-going program, directed by a qualified professional, of activities designed to meet his interests and the physical, mental, and psychosocial well-being;

    o. Failing to provide Mr. Childers with a nourishing, palatable, well-balanced diet that met his daily nutritional and special dietary needs, taking into consideration his preferences;

    p. failing to employ sufficient staff with the appropriate competencies and skills sets to carry out the functions of the food and nutrition service, taking into consideration resident assessments, individual plans of care and the number, acuity and diagnoses of the facilities resident population; and

    q. failing to ensure Mr. Childers received and the facility provided food and drink that was palatable, attractive, and at a safe and appetizing temperature and drinks, including water and other liquids consistent with resident needs and preferences and sufficient to maintain Mr. Childers' hydration.

23. The Defendants' actions were intentional, willful, and in reckless disregard for Mr. Childers's rights.

24. As a result of the Defendants' unlawful actions, Mr. Childers suffered damages including, but not limited to, dehydration and metabolic encephalopathy, all of which caused or contributed to cause his premature death.

## IV. RELIEF REQUESTED

WHEREFORE, Plaintiff, CATHERINE MYERS, as Special Administrator of the Estate of JAMES H. CHILDERS, Deceased, by counsel, respectfully requests that the Court enter judgment in her favor, and against the Defendants, and provide the following relief:

25. Order the Defendants, jointly and severally, to pay actual damages in an amount sufficient to compensate for any actual out-of-pocket costs, including but not limited to any subrogation by any insurance company or government entity;

26. Order the Defendants, jointly and severally, to pay compensatory damages for the physical and mental pain and suffering, emotional distress, humiliation, and embarrassment caused by Defendants' actions;

27. Order the Defendants to pay punitive damages, for its willful, reckless and malicious actions;

28. Order the Defendants, jointly and severally, to pay pre- and post-judgment interest on all sums awarded;

29. Order the Defendants, jointly and severally, to pay reasonable attorney fees and costs of litigating this action; and

30. Order the Defendants, jointly and severally, to provide any and all other relief to which the Plaintiff may be entitled.

## REQUEST FOR JURY TRIAL

Plaintiff, CATHERINE MYERS, as Special Administrator of the Estate of JAMES H. CHILDERS, Deceased, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

GARAU GERMANO, P.C.

/s/ Ashley N. Hadler
Ashley N. Hadler, #29939-49
Attorney for Plaintiff

GARAU GERMANO, P.C.
3710 Washington Boulevard
Indianapolis, Indiana 46205
(317) 822-9530 Phone
(317) 822-9531 Fax
ahadler@g-glawfirm.com